HAYDÉE-CARMEN-MANUELA y GLADYS-GLORIA TORREGROSA, demandantes y apeladas, *v.* VICTORIA C. DODD y RAFAEL E. TORREGROSA, demandados y apelante la primera.

Núm. 6600.—*Sometido:* Diciembre 12, 1935. *Resuelto:* Mayo 26, 1936.

*M. A. García del Rosario*, abogado de la apelante; *Luis Llorens Torres*, abogado de las apeladas.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

Victoria C. Dodd apela de una sentencia adversa dictada en un pleito entablado por las menores Torregrosa para establecer la superioridad de cierto gravamen hipotecario.

En junio de 1924 Rafael Bigles otorgó hipoteca a favor de las menores aquí demandantes para garantizar el pago de la suma de $3,217.50 que les había tomado a préstamo. En octubre, 1925, Bigles traspasó la finca hipotecada a Torregrosa por $4,500. De esta suma Torregrosa pagó $1,383 (sic) en efectivo y retuvo el saldo del precio ascendente a $3,217.50 para hacer frente a la hipoteca perteneciente a sus hijas. Para completar el pago en efectivo Torregrosa le tomó prestado a Vicente Texera $500 y otorgó a favor de éste una hipoteca para garantizar el pago de la misma. Tanto la escritura de enajenación otorgada por Bigles como

la nueva hipoteca otorgada por Torregrosa a favor de Texera estaban comprendidas en un solo documento. De conformidad con las condiciones y cláusulas de dicho documento, Texera como compareciente en el mismo, estaba plenamente informado de la existencia de la hipoteca anterior. Él sabía que era un segundo acreedor hipotecario. En junio de 1928 Torregrosa tomó a préstamo a Victoria C. Dodd, cuñada de Texera la suma de $2,000 y otorgó hipoteca sobre tres fincas para garantizar el pago de la misma. Una de estas fincas lo era la casa y el solar comprados a Bigles, ya gravados por la hipoteca a favor de las menores Torregrosa. No se hizo mención de esta hipoteca. El notario, al ser llamado como testigo en la corte de distrito, manifestó que no creyó necesario mencionarla porque Texera era el "representante absoluto", porque Texera se había encargado de toda la cuestión "con absoluta autoridad" hasta el último momento en que le dijo al notario que hiciera constar el nombre de su cuñada como acreedora hipotecaria, porque el notario entendía que el dinero pertenecía a Texera, y porque tomaba meramente la hipoteca a nombre de su cuñada como acreedora hipotecaria nominal. La prueba en su totalidad demuestra que hasta el momento de firmarse la escritura Texera se había encargado de la transacción, si no a nombre propio, por lo menos como agente y representante de su cuñada. Si ella era o no un principal no revelado (*undisclosed principal*) es cuestión que carece de importancia. El notario que redactó la hipoteca de la Dodd fué el mismo que había redactado el documento por el cual Bigles traspasaba la finca a Torregrosa y por el que Torregrosa otorgaba hipoteca a favor de Texera. Este último también figuró como compareciente en la escritura de junio 16, 1928, acusó recibo de los $500 que Torregrosa le debía y canceló la hipoteca dada a su favor para garantizar el pago de la misma. Unos días después la hipoteca de la Dodd fué inscrita en lo relativo a dos de las tres fincas hipotecadas para garantizar el pago de los $2,000. En lo que a la casa y solar hipotecados a favor de

las menores Torregrosa se refiere, no se solicitó inscripción de la hipoteca de la Dodd. De los $2,000 de principal de la hipoteca de la Dodd, sólo se habían señalado $800 a la casa y solar que Bigles había traspasado a Torregrosa por la suma de $4,500, mientras que el saldo de $1,200 se había distribuído por partes iguales entre los dos solares yermos que constituían el remanente de la propiedad hipotecada.

A las 8:15 de la mañana del 9 de mayo de 1932, se presentó la hipoteca de la Dodd nuevamente en el registro de la propiedad. Al siguiente día, o sea el 10 de mayo, el registrador se negó a inscribir la hipoteca en lo que a la casa y solar se refiere porque la misma aun figuraba en el registro a nombre de Bigles, mas tomó anotación preventiva por 120 días. A las 2:30 de la tarde del 10 de mayo de 1932, Texera presentó en el registro de la propiedad la escritura de enajenación otorgada por Bigles a favor de Torregrosa junto con la hipoteca cuya inscripción el registrador acababa de negar, con súplica de que se inscribieran la casa y el solar a nombre de Torregrosa y de que la ''hipoteca convertida'' fuese inscrita a nombre de la señorita Dodd. Al siguiente día, es decir, el 11 de mayo, el registrador inscribió el traspaso hecho por Bigles a Torregrosa. En este asiento mencionó la hipoteca de $3,217.50 a favor de las menores Torregrosa. Entonces procedió a convertir la anotación preventiva del día anterior en inscripción de la hipoteca de la Dodd. La hipoteca a favor de las menores Torregrosa que había sido presentada a las 2:55 de la tarde del 10 de mayo fué entonces inscrita.

La teoría de la apelante es que por virtud de los hechos que anteceden, la hipoteca de la Dodd que era una segunda hipoteca se convirtió en primera y que la hipoteca a favor de las menores Torregrosa, que era una primera hipoteca, fué relegada a la posición de una segunda hipoteca.

El artículo 70 de la Ley Hipotecaria dispone:

"Cuando la anotación preventiva de un derecho se convierta en inscripción definitiva del mismo, surtirá ésta sus efectos desde la fecha de la anotación."

La médula del argumento de la apelante es: que la hipoteca de la Dodd fué presentada para su inscripción a las 8:15 de la mañana del 9 de mayo; que al tomarse anotación preventiva por 120 días y al convertirse la misma en inscripción permanente de la hipoteca el 11 de mayo, la hipoteca debe considerarse como inscrita el 9 de mayo; que habiendo sido presentada la escritura de enajenación a favor de Torregrosa a las 2:30 de la tarde del 10 de mayo y la hipoteca a favor de las menores Torregrosa habiendo sido mencionada en el registro por primera vez al inscribirse dicha escritura la hipoteca de la Dodd fué inscrita como primera hipoteca, 30 horas 15 minutos antes de que hubiera mención alguna en el registro de la hipoteca de Torregrosa.

El artículo 70 de la Ley Hipotecaria debe ser interpretado en armonía con los artículos 9, 20 y 29 de la misma, cuyas partes pertinentes leen así:

"Artículo 9.—Toda inscripción que se haga en el Registro expresará las circunstancias siguientes:

"

"3 ª—La naturaleza, extensión, condiciones y cargas del derecho sobre el cual se constituya el que sea objeto de la inscripción."

"Artículo 20.—Para inscribir o anotar los títulos en que se transfiera o grave el dominio o la posesión de bienes inmuebles o derechos reales, deberá constar previamente inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se haga la transmisión o gravamen.

"En el caso de resultar inscrito aquel derecho a favor de persona distinta de la que otorgue la transmisión o gravamen, los Registradores denegarán la inscripción solicitada."

"Artículo 29.—El dominio o cualquier otro derecho real que se mencione expresamente en las inscripciones o anotaciones preventivas, aunque no esté consignado en el Registro por medio de una inscripción separada y especial, surtirá efecto contra tercero desde la fecha del asiento de presentación del título respectivo."

En *Antonsanti* v. *Registrador,* 9 D.P.R. 190, este tribunal dijo:

". . . las anotaciones preventivas que deben tomar los Registradores de la Propiedad cuando deniegan la inscripción, o anotación de cualquier documento, por defectos insubsanables del mismo, con arreglo a la ley votada por la Asamblea Legislativa de esta isla de 1 de marzo de 1902, sobre 'Recursos contra las resoluciones de los Registradores de la Propiedad', no tienen otro objeto que garantizar el derecho de los interesados en la inscripción o anotación del documento, por el término de 120 días que duran sus efectos, para que si dentro de dicho término pueden presentar un nuevo título o subsanar cualquier obstáculo que impidiera la inscripción del anterior, puedan inscribir su derecho, retrotrayendo los efectos de la inscripción a la fecha de la anotación preventiva."

Véanse también *Ramis* v. *Registrador,* 18 D.P.R. 76; y *Alvarez* v. *Quilichini,* 24 D.P.R. 161.

El derecho que una anotación preventiva tiene por objeto proteger es un derecho preexistente. La anotación preventiva no crea nuevos derechos. Con anterioridad a la fecha de la anotación preventiva la señorita Dodd tenía derecho a inscribir su hipoteca con posterioridad, mas no antes de inscribirse la finca hipotecada a nombre de Torregrosa. La hipoteca de la Dodd al quedar así inscrita estaría subordinada a cualquier hipoteca o gravamen anterior mencionados en la inscripción hecha a nombre de Torregrosa. La anotación preventiva no alteró esta situación ni confirió a la señorita Dodd derechos nuevos o adicionales. Meramente protegió el derecho que ella ya tenía, dándole la oportunidad de hacer inscribir la escritura de Torregrosa y luego inscribir su propia hipoteca, convirtiendo la anotación preventiva en inscripción permanente, siempre que lo hiciera dentro del término de 120 días. No le confirió inmunidad contra el efecto de ninguna mención de cargas y gravámenes anteriores que pudieran hacerse al inscribir la finca hipotecada a nombre de Torregrosa.

Si la señorita Dodd hubiese presentado en primera instancia la escritura de Torregrosa con su hipoteca, conforme

lo hizo inmediatamente después de haberse negado el registrador a inscribir su hipoteca, éste hubiera inscrito primero la escritura de enajenación mencionando desde luego la hipoteca anterior a favor de las menores Torregrosa, y hubiera inscrito entonces la hipoteca de la Dodd sujeta al gravamen de la hipoteca de Torregrosa. No es necesario dudar, ni dudamos, la honradez y buena fe de la señorita Dodd al no seguir este camino. Empero, de prevalecer el argumento de la apelante en el presente caso, cualquier segundo acreedor hipotecario poco escrupuloso podría evadir las desventajas del procedimiento ordinario natural y lógico valiéndose del artificio claro de presentar primero su hipoteca y, luego de obtener una anotación preventiva, presentar nuevamente su hipoteca acompañada por las escrituras no inscritas de su deudor hipotecario de la finca hipotecada. El establecer tal precedente abriría de par en par las puertas al fraude y hasta ese extremo destruiría no solamente los fines de la justicia sino también las claras disposiciones de los artículos 9 y 20, supra.

■ De acuerdo con los términos del artículo 20 la inscripción de la escritura de enajenación otorgada por Bigles a favor de Torregrosa era condición precedente a la inscripción de la hipoteca de la Dodd. Fué por esta razón que el registrador, actuando en armonía con las disposiciones expresas de la ley, se negó a inscribir la hipoteca de la Dodd cuando por primera vez se le presentó la misma en el registro de la propiedad. La mención de la hipoteca de Torregrosa fué hecha en armonía con el mandato contenido en el artículo 9. Si la señorita Dodd era un tercero dentro del significado de dicho término, según se usa el mismo en el artículo 29, ella debe ahora considerarse que tuvo pleno conocimiento después de las 2: 30 de la tarde del 10 de mayo. Si ella no era un tercero no se convirtió en tal por la anotación preventiva o por cualquier otro asiento hecho en el registro de la propiedad. Sea ello como fuere, ante los ojos de la ley ella no

era un tercero. Si la conversión de la anotación preventiva en inscripción permanente de la hipoteca de la Dodd se retrotrae a la fecha de la anotación preventiva misma, y a virtud de dicha anotación a la fecha de su presentación, ella deberá retrotraerse a esas fechas a virtud de la inscripción de la escritura de enajenación, sujeta a la mención que en la inscripción se hizo en la escritura de hipoteca de Torregrosa. El resolver lo contrario equivaldría a abrogar las claras disposiciones de los artículos 9, 20 y 29 de la Ley Hipotecaria.

También convenimos con el juez de distrito en que a la señorita Dodd se imputaba conocimiento de la existencia de la hipoteca de Torregrosa a partir de la fecha de su propia hipoteca, debido a la información contenida en la escritura de enajenación otorgada por Bigles a favor de Torregrosa. De todos modos, la señorita Dodd no puede ahora alegar desconocimiento de todos los hechos conocidos por su agente, Sr. Texera, antes de otorgarse la segunda hipoteca. Ella no era un tercero.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Travieso no intervino.